James O. Moore, J.
This action was instituted on February 23, 1970, pursuant to article 12-A of the Public Health Law, to enforce the provisions of that law pertaining to air pollution and the regulations issued pursuant thereto. Subsequent *83 to the joinder of issue, and on April 4, 1970, the plaintiff served a motion for summary judgment. On April 17, 1970, the return day of the motion, the defendant consented to the entry of an order and judgment which, among other things, decreed that it should abate air pollution at its G-owanda plant by the installation of certain equipment and the conversion of two large boilers from coal firing to oil firing in accordance with plans and specifications which had been approved by the plaintiff. A time schedule for the required conversion was set forth in the order, and it was further decreed that after June 15, 1970, the defendant should operate all combustion installations so as to comply at all times with Parts 186 and 191 of the New York State rules for “Air Pollution Control.” (10 NYCRR Parts 186, 191.)
The order and judgment of April 17, 1970, granted a further ‘ ‘ conditional judgment ’ ’ which was to become absolute in the event the defendant failed to perform or comply with the provisions of the first decretal paragraph, which has been described above. This “ conditional judgment ” reiterates in more detail the restraints against violation of Parts 186 and 191 of the New York State rules for air pollution control, directs the installation of air-cleaning devices and conversion of equipment and fuel, and ultimately directs the discontinuance of the operation of fuel-burning equipment until such time as it has been corrected to the satisfaction of the plaintiff.
On June 12, 1970, upon motion of the defendant, the order and judgment of April 17, 1970 was modified by extending the deadline of compliance to July 19, 1970. This modification was based on a showing of a failure upon the part of the defendant’s suppliers to meet delivery schedules and upon a representation upon the part of the defendant that the equipment was then on hand. The order and judgment, as modified at the behest of the defendant, contained the following provision: “2. After July 19, 1970, it [the defendant] shall operate all combustion installations so as to comply at all times with Parts 186 and 191 of the N. Y. State Rules for Air Pollution Control.”
The instant proceeding was brought on by an order to show cause dated August 191,1970, wherein the plaintiff seeks an order directing that the defendant immediately cease and abate the emission of smoke, fly-ash and soot, the shade, appearance or contents of which are in violation of the afore-mentioned Parts 186 and 191 of the rules and, in addition, seeks the assessment of monetary penalties for such violations. Although the prayer for relief in the moving papers requests a direction for *84 the complete cessation of the operation of fuel-burning equipment, this part of the. prayer for relief was abandoned upon the argument of the motion.
The plaintiff’s motion is supported by voluminous affidavits designed to show that since July 19, 1970, the defendant has violated section 191.2 of the rules by permitting the emission of smoke having a density darker than No. 1 on the Eingelmann chart and that the defendant during this same period has violated Part 186.1 of the rules by permitting an air-contamination source to cause air pollution, which is defined as “the presence in the outdoor atmosphere of one or more air contaminants in quantities of characteristics and of a duration which are injurious to human, plant or animal life or to property or which unreasonably interfere with the comfortable enjoyment of life and property throughout the state or throughout such areas of the state as shall be affected thereby ’ ’. (Public Health Law, § 1267, subd. 4.)
The defendant counters the plaintiff’s claims with respect to the violations of section 191.2 (exceeding the Eingelmann chart limits) by a recitation of the steps taken by the defendant to install new equipment and convert combustion systems from coal to oil pursuant to plans approved by the plaintiff and at an expense of some $300,000-to the defendant. Although the majority of the Eingelmann violations are disputed, it is conceded that at least one very serious violation was occasioned due to the malfunctioning of the new equipment and the negligence of the defendant’s employees on August 8, 1970. The balance of the alleged violations are attributed to start-up problems and the faulty calibrations of the new instrumentation. Nonetheless it is clear that from July 19, 1970, through August 30,1970, there occurred a series of violations of section 191.2 which did not fall within the exceptions contained in section 191.3 respecting breakdowns, tube blowing and the starting of new fires.
The defendant’s opposing affidavits repeatedly advance the in terrorem argument that, if full compliance with the decree (to which the defendant freely consented) is required, the result will be the termination of its operations and the consequent economic collapse of the Glowanda community. There is expressed, however, the hopeful prediction that the newly installed equipment will shortly bring about an operation which meets all the standards of the laws and regulations governing air pollution.
*85 There followed reply affidavits upon behalf of the plaintiff and additional opposing affidavits by the defendant which add little to the resolution of this controversy, save perhaps to create questions of fact as to the full extent of the Ringelmann violations and the cause thereof. The plaintiff’s reply affidavits do, however, supplement the proof relating to the continued fallout of soot on the premises of residents in Armes Court, an area containing approximately 40 houses one quarter of a mile north of the defendant’s plant, during the period beginning with the reopening of the plant on August 20, 1970, and continuing daily up to September 7, 1970, the day upon which the affidavits were executed.
Granted that the affidavits of eight obviously irate residents complaining of the effect on their homes of an aggravated nuisance are at the very least difficult to rebut, the defendant’s answer in the form of a brief is not persuasive. Section 186.1 provides that no person shall cause any air contamination source to produce air pollution to the extent that it unreasonably interferes with the comfortable enjoyment of life and property in areas of the State affected thereby. The defendant argues that this standard is so vague and indefinite as to be unenforceable and that it is in conflict with the Ringlemann limits prescribed in section 191.2. It is true that section 186.2 provides that, if there is a rule controlling a specific air contamination source, section 186.1 shall not be applied. On the other hand, the defendant freely consented to an order and judgment directing compliance with Part 186 of the rules, and any doubts it may have entertained as to the meaning of the section or the validity of its application should have been raised at that time.
Be that as it may, the court finds that during the period in question there were numerous violations of the Ringelmann limits prescribed by section 191.2 which were not within the exceptions contained in section 191.3. Therefore, the court concludes that there have been violations of the judgment and order of June 12, 1970. The defendant’s failure to operate its equipment in accordance with the applicable restrictions was not a sporadic technical violation but resulted in creating air pollution which unreasonably interfered with the comfortable enjoyment of the life and property of persons residing in the Armes Court area of Gowanda, contrary to the provisions of section 186.1.
The affidavits of residents of this area support findings that there was a daily fallout of oily, sooty particles which caused damage to houses, cars, outdoor furniture, swimming pools and clothing. Further affidavits filed on October 16, 1970, establish that these conditions have persisted through October 15, 1970, *86 three months after the date of compliance fixed by the judgment and order. There can be no question that the residents of Armes Court have been subjected to a noisome nuisance which has been directly caused by the defendant’s operations. Defendant’s reply affidavits from happy and contented residents of other areas in Gowanda who have been spared this fate bear little weight, and the court is singularly unimpressed by the belated suggestion that the fallout may just possibly be attributed to the Erie-Lackawanna Railroad.
There-remains the problem of devising effectual remedies and meaningful sanctions to achieve future compliance with the judgment and order as well as the established public policy of the State. This inevitably involves a balancing of the conflicting public interests represented, on the one hand, by the economic benefits that flow from the continued operation of industrial enterprises and, on the other, by the right of individual residents to enjoy the physical and esthetic benefits of an atmosphere relatively free from contamination and pollution. The scales are no longer in any semblance of balance. The lessons of the past decade have made all too clear that the great technological advances of this century have been purchased at the expense of creating a very clear and imminent danger to the environment. It is no longer a question of the quality of life but, rather, one of survival.
The great technical expertise that has been responsible for these advances is surely capable of devising and installing equipment which will eliminate the fallout of oily, sooty particles over an area of a quarter of a mile. It is the responsibility of industry to effect the necessary operational changes which will reduce air pollution to acceptable standards, and the expense of doing so must be deemed as a part of the cost of doing business. There has been no showing in this proceeding that this is an impossible undertaking or that it involves prohibitive expenditures. Indeed, both parties have implied that the applicable standards can be met by the equipment already installed, provided it is properly adjusted and operated.
Under these circumstances, as the plaintiff conceded on the oral argument, there is no need for an order directing the discontinuance of the defendant’s operations. Sanctions must, however, be imposed to assure future compliance with the judgment and order of June 12,1970. Therefore, the court imposes a fine in the amount of $5,000 upon the defendant for the violations of the provisions of the decree through the period ending October 15, 1970 which direct compliance with section 191.2 of Part 191 of the New York State rules for air pollution control. This fine *87 shall be paid within 10 days of the entry of an order herein, and in the event of the failure to pay such fine judgment may be entered therefor.
(Supplemental Memorandum, December 18, 1970.)
Upon the settlement of the order in the above-entitled matter, the attorneys for the defendant have objected to the use of the word ‘ ‘ penalties ’ ’ in the first decretal paragraph of the proposed order, pointing out that the memorandum opinion used the word “ fine The action taken by the court is more properly characterized as the imposition of penalties, and the original memorandum opinion is hereby amended to reflect this change in verbiage.
Defendant’s counsel further object that the memorandum opinion contains nothing to support the second decretal paragraph of the proposed order. The court finds this objection is well founded, and the paragraph should be eliminated from the proposed order. The defendant, however, should be on notice that the judgment and order of June 12, 1970 still remains in full force and effect, and until such order is modified the court will entertain subsequent applications to enforce its provisions. Accordingly, the court has signed the order presented, eliminating therefrom the second decretal paragraph.